# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br>vs.<br><br>CARLOS JESUS MARGUET-PILLADO,<br><br>                                    Defendant. | CASE NO. 06CR2505  IEG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT DUE TO AN INVALID DEPORTATION**<br><br>(Doc. No. 26) |

On November 28, 2006, Carlos Jesus Marguet-Pillado ("defendant") was indicted on one count of being a deported alien found in the United States. Presently before the Court is defendant's motion to dismiss that indictment because the deportation was allegedly invalid. The Court denies the motion.

## BACKGROUND

Defendant was born in Tijuana on November 4, 1968. (Def. Exhibit A.) Defendant's biological father is unknown, and the parties agree that Mr. Michael Marguet is not defendant's biological father. (Def. Memo. ISO Motion, at 1; Govt. Opp., at 2.) Nonetheless, Mr. Marguet held defendant out as his son, claiming him as a dependent on tax returns and obtaining federal food stamp aid for him. (Def. Memo. ISO Motion, at at 2.) Mr. Marguet was named as defendant's father on a Mexican birth certificate filed on August 23, 1973–almost five years after defendant's actual date of birth. (Def. Exhibit A.) During an interview with an immigration

1  examiner on January 9, 1974, Mr. Marguet claimed that he registered defendant as his own child
2  because he wanted to marry defendant's mother, Juana Pillado, and immigrate her family.  (Def.
3  Exhibit H.)  That same date, defendant became a lawful permanent resident.  (Govt. Opp., at 2.)
4      After convictions in San Diego County Superior Court for second-degree burglary and
5  attempted murder with a firearm, defendant was released from prison in 2002.  (Def. Memo. ISO
6  Motion, at 2.)  In 2006, defendant was taken into custody in an unrelated incident[1] and turned over
7  to immigration authorities.  (Id.)  Defendant moved to terminate removal proceedings, claiming
8  derivative citizenship through Mr. Marguet.  (Def. Exhibit F.)  The Government opposed the
9  motion on the basis of evidence (including, inter alia, Mr. Marguet's interview with the
10 immigration examiner) that Mr. Marguet was not defendant's biological father.  (Def. Exhibit G.)
11 In a hearing on September 22, 2006, the immigration judge denied defendant's motion to terminate
12 removal proceedings and ordered defendant deported.  (Def. Exhibit E.)
13     Defendant was apprehended in a traffic stop in Chula Vista on October 20, 2006.  (Govt.
14 Opp., at 3.)  He was arrested on two outstanding domestic violence warrants and referred to
15 immigration officials.  (Id.)

**DISCUSSION**

17     In a § 1326 prosecution, Fifth Amendment due process "requires a meaningful opportunity
18 for judicial review of the underlying deportation."  United States v. Mendoza-Lopez, 481 U.S.
19 828, 839 (1987); United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998), overruled
20 on other grounds by United States v. Corona-Sanchez, 291 F.3d 1201, 1208-10 (9th Cir. 2002) (en
21 banc).  If the defendant cannot obtain judicial review in the underlying deportation, the defendant
22 may collaterally attack the deportation in the criminal proceeding.  United States v. Arrieta, 224
23 F.3d 1076, 1079 (9th Cir. 2000).  To launch a collateral attack, the defendant must show
24 exhaustion of any available administrative remedies, deprivation of opportunity for judicial review
25 at the deportation proceedings, and fundamental unfairness of the deportation order.  8 U.S.C. §
26 1326(d); United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004).  The removal
27 order is fundamentally unfair if "(1) [a defendant's] due process rights were violated by defects in

---

[1] Defendant was not charged in conjunction with the unrelated incident.

his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." Ubaldo-Figueroa, 364 F.3d at 1048 (quoting Zarate-Martinez, 133 F.3d at 1197). To establish prejudice, the defendant must establish a "'plausible' ground for relief from deportation." Id. at 1050 (quoting Arrieta, 224 F.3d at 1079).

Defendant claims his deportation proceeding was defective because the immigration judge incorrectly advised him on the law by stating that he could not establish derivative citizenship unless he had a biological relationship with Mr. Marguet, a United States citizen. Defendant argues the Immigration and Naturalization Act ("INA"), as written at the time of his birth and immigration, did not require such a biological relationship. Misinstruction on the law is a violation of due process. Ubaldo-Figueroa, 364 F.3d at 1049; United States v. Ahumada-Aguilar, 295 F.3d 943, 950 (9th Cir. 2002).

"The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth." Scales v. Immigration & Naturalization Serv., 232 F.3d 1159, 1162 (9th Cir. 2000) (internal quotations omitted). The Government concedes Marguet-Pillado's derivative citizenship claim must be examined under the pre-1986 version of the statute. (Govt. Opp., at 5.) The question, therefore, is the proper interpretation of the INA at the time of Marguet-Pillado's birth and purported legitimation.

Under 8 U.S.C. § 1401(a)(7) (1966), the category of "citizens of the United States at birth" included:

> a person born outside of . . . the United States . . . of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years.

This version of § 1401(a)(7) "appl[ied] as of the date of birth to a child born out of wedlock . . . if the paternity of such child is established while such child is under the age of twenty-one years by legitimation." Id. § 1409(a) (1952) (emphasis added). A child could be legitimated under the law of the child's or parent's residence or domicile. Id. Marguet-Pillado argues that this version of the statute contained no requirement of a blood relationship between a father and child. Therefore, the immigration judge allegedly erred in failing to determine whether Marguet-Pillado was legitimated

1 under California law.

2 The Government interprets the statute differently, arguing that the proper construction of § 1409(a) begins with "paternity". Because the parties agree Mr. Marguet is not defendant's biological father, the Government argues that defendant cannot establish "paternity," i.e., a blood relationship to Mr. Marguet.

3 The Government relies on Miller v. Albright, 523 U.S. 420 (1998), a case upholding the post-1986 version of § 1409(a), which required formal proof of paternity for children born out of wedlock to citizen fathers, but not citizen mothers. Although six justices rejected the equal-protection challenge, that majority was splintered into three pairs of justices writing separately. In an opinion authored by Justice Stevens and joined by Chief Justice Rehnquist, the Court observed, "The substantive requirement embodied in § 1409(a)(4) serves, at least in part, to ensure that a person born out of wedlock who claims citizenship by birth actually shares a blood relationship with an American citizen." Id. at 435. Other than legitimation, the pre-1986 version of § 1409(a) "offered no other means of proving a biological relationship." Id. at 435. The Court further noted, "[t]he 1986 amendment also added § 1409(a)(1), which requires paternity to be established by clear and convincing evidence, in order to deter fraudulent claims[.]" Id. at 436. The actual language of § 1409(a)(1) does not include "paternity," but instead uses the phrase "blood relationship between the person and the father". 8 U.S.C. § 1409(a)(1) (1986). Therefore, this opinion from Miller equated "paternity" with "blood relationship," and the Government urges the Court to adopt the same statutory interpretation here. (Govt. Opp., at 6.)

4 Defendant asks the Court not to rely on Miller because that case addressed a different issue in a later version of the statute. (Def. Reply, at 1-2.) However, defendant fails to present the Court with legal authority to support his alternative interpretation of the statute. Instead, defendant submits the declaration of Jan J. Bejar, a private immigration attorney and director of an immigration clinic at the University of San Diego School of Law. (Def. Attachment J.) Mr. Bejar represents, "[his] review of the literature on derivative citizenship revealed no obstacle to [defendant] deriving citizenship from his father, provided he was properly legitimated under California law." (Bejar Decla. ¶ 5.)

- 4 - 06cr2505

1       The Court follows the Supreme Court's guidance in <u>Miller</u> and rejects Mr. Bejar's contrary
2  reading of the law.  In light of the undisputed evidence that defendant has no blood relationship
3  with Mr. Marguet, the Court finds the immigration judge's deportation order was not
4  fundamentally unfair.  <u>Ubaldo-Figueroa</u>, 364 F.3d at 1048.  As the Supreme Court explained in
5  <u>Miller</u>, both the pre- and post-1986 versions of § 1409(a) had the purpose of "ensur[ing] that a
6  person born out of wedlock . . . actually shares a blood relationship with an American citizen."
7  523 U.S. at 435.  Although defendant claims the term "'paternity' plainly does not require a blood
8  relationship" outside of the post-1986 statute (Def. Reply, at 2), "paternity" also appears in the
9  pre-1986 statute.  The discussion in <u>Miller</u> makes clear the pre-1986 version of the statute focused
10 on "proving a biological relationship" and explicitly equates "paternity" with "biological
11 relationship."  <u>Id.</u> at 435-36.  The Court finds the 1986 amendments to the INA did not change the
12 underlying meaning of "paternity," which is synonymous with "biological relationship."  Where
13 defendant indisputably lacks a biological relationship with Mr. Marguet, defendant's argument for
14 derivative citizenship contravenes the purpose and intent of § 1409(a)

15      Even if the immigration judge misinstructed defendant on the law, defendant has failed to
16 make the necessary showing of "prejudice" because defendant has not shown a "plausible ground
17 for relief from deportation."  <u>Ubaldo-Figueroa</u>, 364 F.3d at 1048, 1050 (internal quotation
18 omitted).  Defendant claims he was properly legitimated under California law.  However,
19 defendant–here represented by counsel–fails to present the Court with an accurate statement of the
20 relevant law.  Defendant's opening moving papers cite Family Code § 7611, a provision that took
21 effect in 1994.  (Def. Memo. ISO Motion, at 8; Govt. Opp., at 6.)  Defendant's reply explains that
22 Family Code § 7611 is a recodification of Civil Code § 7004, a provision enacted in 1975.  (Reply,
23 at 3.)  Under <u>Scales</u>, defendant's argument for derivative citizenship must apply the law in effect at
24 the time of defendant's birth.  232 F.3d at 1162. Defendant never cites the California rule on
25 legitimation that was in effect at his birth in 1968.[2]

26 //

---

[2] Defendant never answered the Government's arguments that Civil Code § 230 was in effect prior to 1975 and that defendant failed to satisfy the requirements of legitimation of that provision. (<u>See</u> Govt. Opp., at 6-7.)

**CONCLUSION**

Defendant's deportation proceeding did not violate his due process rights. Even if a violation did occur, defendant fails to establish prejudice. Therefore, the Court **DENIES** defendant's motion to dismiss the indictment due to an invalid deportation. Defendant's next hearing date **SHALL BE** <u>Monday</u>, <u>August 13</u>, <u>2007</u> at <u>2 p.m.</u>

**IT IS SO ORDERED.**

**DATED: July 14, 2007**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**